## Case No. 14,050.

### Ex parte TILLMAN.

[3 App. Com'r of Pat. 282.]

Circuit Court, District of Columbia. March 15, 1860.

#### PATENTS—PAVEMENTS—CLAIMS—HOW TO BE CONSTRUED.

[1. Tillman's invention of an improved pavement "whose surface is composed of alternate elevations and depressions, substantially equal in number and surface, and nearly rectangular, the depressions being large enough easily to admit either calk of the horseshoe, their sides nearly vertical, the longest sides nearly crosswise of the street," does not infringe Isaac D. Kirk's invention. Kirk's invention was alternate elevations and openings. In Tillman's invention the elevations and depressions are substantially equal in number and in surface; in Kirk's they are equal in number, but unequal in surface.]

[2. Where the claim is certain and specific, but a construction can be put upon the specification which would extend the claim of the inventor to such an extent as to make the invention unpatentable, such a construction should not stand in the way of the clear and specific claim, and a patent should be issued.]

Appeal [by Samuel D. Tillman] from the decision of the commissioner of patents, for refusing to grant to him letters patent for his improvement in pavements.

MORSELL, Circuit Judge. He states his claim to be in the same words as stated in the report of the examiners, unnecessary therefore to repeat it here. The commissioner for his decision adopts the report of the examiners, date 25th February, 1858, which is in these words: "The nature of this invention is very clearly indicated by the claim, which is as follows: What I claim as new, and for which I ask letters patent, is a pavement whose surface is composed of alternate elevations and depres-

sions, substantially equal in number and surface, and nearly rectangular, the depressions being only large enough easily to admit either calk of the horseshoe, all their sides nearly vertical; and the longest sides nearly crosswise of the street; thus giving sure foothold at the shortest possible intervals, while the wheel was smoothly upon the elevations, without falling into the depressions, as described." The principle upon which this pavement is constructed, the applicant says (page 8 of the specification) "being the formation of a continuous series of surfaces, on some of which the wheel may at all times press perpendicularly and roll without impediment; and the formation of indentations alternating with such surfaces, each of which extends crosswise to the road, sufficiently to admit the toe-piece of a horseshoe, and yet exclude the wheel, in common use," it is evident that a slight alteration of the contour of the indentations and grade faces will not alter the principle as set forth.

It is proper that some of the modifications should be noticed and explained. The corners of the indentations may be rounded, and the sides slightly curved, and it may be proved by experience that such modifications may add to the durability of the road. When the plates are laid on a foundation, the bottom part of such indentations may be left off, so as to form an opening through the plate, instead of an indentation merely. The longitudinal lines of the indentations may run slightly oblique, provided there is still room for the admission of the toe calk, as set forth. Now let us compare the pavement of Isaac D. Kirk, to whom a patent was refused in 1853, and to which reference was made in the first letter of rejection, with that of Tillman, taking the above recited claim; and, what is announced as the equivalent of the devices thereby covered as the foundation of such comparison. both are cast iron pavements. Tillman's has alternate elevations and depressions, Kirk's alternate elevations and openings through the pavement; but these openings constitute a modification of Tillman's depressions, for he has said above that, under certain circumstances, the bottom part of such indentations may be left off, so as to form an opening through the plate, instead of indentations merely. In Tillman's the elevations and depressions or openings are substantially equal in number and in surface; in Kirk's they are equal in number, but unequal in surface. But we understand from the specification that substantial equivalency is obtained when the width of each indentation, being a little more than that of the heel-calk of a common horseshoe, and the length slightly exceeding that of the toe-calk of such shoe, the area of such elevation shall bear such a relation to the area of each depression as deduced by the above rule, and the eleva-

tions and depressions be so arranged with respect to each other as that the wheel shall have a constant perpendicular support; or, in other words, without the point of pressure and the axis of the wheel shall always be in the same vertical line. Now this condition cannot always be fulfilled, even in Tillman's pavement, unless the depression be made so small that the toe-calk cannot enter, for, as has been well remarked in the official letters of the 31st of December, last, it is well known that the ties of many a wheeled vehicle are narrower than the usual length of the toe-calk. It follows, then, that if such a wheel travel over a single series of elevations in the direct line of traction, there will be movements of time when it will have no vertical support. But, under whatever circumstances the wheel shall have a constant vertical support on Tillman's pavement, under precisely the same circumstances will it have the same support on Kirk's. We must therefore conclude that the elevations and depressions in Kirk's pavement are substantially equal in surface, as well as in number. Tillman's elevations and depressions or openings are nearly rectangular. Kirk's openings have the figure of a rhombus. But Tillman does not confine himself to the rectangular form, for he has described in his specification and shown by his drawings that the depressions may be modified in form without violating the principles of his invention, and among those modifications are the ellipsoid and rhomboid figures. The form of the depressions being changed, a change of form of the elevations is necessarily involved; hence, when Tillman employs the rhomboid form of depression, it and the elevation are substantially like those used by Kirk. Tillman's depressions, as claimed, are only large enough to admit either calk of the horseshoe. In the specification their width is described as bearing a little more than the heel-calk, and their length as slightly exceeding that of the toe-calk. Kirk's openings are considerably larger (as seen in his model) than either the heel or toe calk of a common horseshoe, but what is the patentable limit between "a little more" and "slightly exceeding" and "considerably larger." We confess that we can discover none, when it is considered that the depressions or openings in both Tillman's and Kirk's pavements are designed for the common purpose of offering a firm foothold for the horse.

Finally, Tillman's depressions have all their sides nearly vertical, and the longest sides nearly crosswise of the street, and these are also instituted between Tillman's invention and that of Titus and des Granos, to which reference has also been made by the examiner, a still closer resemblance might be established than that found to exist between Tillman's and Kirk's; but we deem

this unnecessary, and have only to say, in conclusion, that, in view of the references adduced, we are disposed to think that the claim submitted might have been allowed had it not been so enlarged and explained in the body of the specification as clearly to bring it within the scope of the cases referred to by the examiner. As it stands, we can only recommend that a patent be refused, which we accordingly hereby do.

On the 25th February, 1858, the commissioner says: "The aforegoing report is confirmed, and the application rejected." The office correspondence of the 5th and 12th of April, 1858, show that the above objections "that the claim, by certain terms used in the body of the specification, so enlarged and explained said claim as to bring it within the scope of the cases referred to by the examiner, was not known to the appellant or made until in the action of the examiners of appeal, and that, immediately on information thereof, he offered to explain or strike out, * * * as not intended when they were inserted, for 'any such purpose, in reply to his suggestion to that effect, in his letter of the 5th of April, 1858." The office letter of the 12th of that month is in these words: "In reply to your letter of the 5th inst., as asking for the return of your specification for improvement in pavement, you are informed that the action of the office on February 25th, rejecting your application, is regarded as final, and that your papers are not now in a condition for further amendment. See sections 30 & 114 of the enclosed rules."

In the appeal from this decision the appellant has filed seven reasons of appeal. The first five are in general terms denying the application of the particular references to his invention. The sixth is: "Because the Hon. commissioner of patents, in rejecting said application, erred in deciding that the invention described and claimed therein was of a character 'too indefinite to support a patent,'" and also erred in deciding that the claims in said specifications were so enlarged and explained by the body of the specification as to bring it within the scope of the cases above referred to in these reasons of appeal. The seventh is in general terms.

This was the state of the case when laid before me. Upon due notice, also, the appellant appeared by his attorney, and, having filed his written argument, submitted the case.

As I understand the foregoing decision, it is that, if the summing up or claiming clause of the specification stood alone, a patent would have been granted according to the appellant's application, so that it only remains for me to consider the force of the objection, that, by the operation of certain terms used in the body of the specification, the claim is so enlarged and explained as clearly to bring it within the scope of

the cases referred·to by the examiner. If so, the appellant strangely misunderstood them, for it appears throughout other parts of his plan that his great objection was to remedy the evils consequent upon the practical use of pavements made according to the devices of said references. To remove the objection, it appears from the files in the office that, immediately upon its being known to him, he offered to strike out the objectionable terms, which offer is in writing, and filed in this case, and shows strong reasons why the stringency of the rules under which it was refused should have been relaxed.

Upon a careful examination, I think it will appear that the intention in using the words was merely to describe the matter on which the claim rests, and its mode of application, and to guard against attempts of invaders of his rights by pretended improved modifications. As to certainty, it must always depend upon the nature of the subject, and more must not be required than to a common intent, as in popular use, and intelligible to a workman skilled in the art or science to which it appertains. The language of the statute is so "as to enable any person skilled in·the art or science to which it appertains, or with which it is most nearly connected, to make, construct, and compound the same," etc. The words in the connection in which they stand appear to me to contain a plain intelligible hint. The openings or depressions are to be merely wide enough to admit the toe-calk, readily, and no wider, and to exclude the thread of the wheel. The sides of these openings are to be nearly in a right line, and nearly vertical, and nearly at right angles to the direction of the road or street. The objectionable terms are "a little more" and "slightly exceeding." the limitation is "sufficient to admit the toe-piece of a horseshoe, and yet exclude the wheel in common use." It seems to me that, whatever the use refined criticism might see of indefiniteness, this plain workman, using the popular sense. would have no difficulty in knowing that it did not mean considerably larger, such as in the invention of Kirk. If, however, this view is incorrect, yet it is plain that the commissioner has misapprehended the rule of patent law on the subject of the proper construction.

It is true that on certain occasions, when necessary to explain any ambiguity in the summing up or claim part of the specification, for the purpose of truly understanding the claim, resort should be had to the body of the specification, that the whole may be taken together, according to the rule, that in support of the claim a liberal, not a strict, construction shall prevail. But in this case there is no such necessity, for the commissioner himself has said: "The nature of this invention is very clearly indicated by the claim, which is as follows," etc. Is a forced construction of words. found in the·body of the specification to make a clearly defined claim in the summing up clause broader than the invention intended and so defined? The rule is well settled by a number of authorities. both in this country and in England (see note 1, to Curtis on Patents, section 132), in the opinion of Sir N. C. Tindall: "There can be no rule of law which requires the court to make any forced construction of the specification, so as to extend the claim of the patentee to a wider range than the facts would warrant. On the contrary, such construction ought to be made as will, consistently with the fair import of the language used, make the claim of invention coextensive with the new discovery of the grantee of the patent. And we see no reason to believe that he intended, under this specification, to claim either the staves, or the position of the staves as to their height in the drying house, as a part of his own invention." Curtis, in the same section, expressing his view of the rule, says: "That a specification should be so construed as, consistently with the fair import of language, will make the claim coextensive with the actual discovery. So that a patentee, unless his language necessarily imports a claim of things in use, will be presumed not to intend to claim things which he must know to be in use." So in the decision of Davoll v. Brown [Case No. 3,662], by Judge Woodbury, as stated by Curtis (section 387): "If this statement or description of the invention is clear and explicit, then the language in which he has made his claim. which is generally to be found in a summary statement of the subject matter for which he asks a patent, may and should be construed so as to include the actual invention previously set forth, if it can be so construed without violation of principle." The judge further says: "I do this. not to prejudice him by including more than is in his summary, and thus making the latter too broad. and hence void; but it is to aid him." etc. Again: "I do not see. however. that the obvious meaning of the summary, standing alone, is altered by the description when they are carefully analyzed."

I feel, therefore, obliged to say there is error in the decision of the commissioner, and that the same is hereby reversed and annulled, and I do direct that a patent issue to said appellant for his improved invention, as prayed.